UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX BALDERAS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>　　　　Defendant. | Case No.  EDCV 07-1062 -JTL<br><br>MEMORANDUM OPINION AND ORDER |

**PROCEEDINGS**

On August 30, 2007, Alex Balderas ("plaintiff") filed a Complaint seeking review of the Social Security Administration's denial of his application for Supplemental Security Income benefits.  On September 14, 2007, plaintiff filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum.  On September 24, 2007, Michael J. Astrue, Commissioner of Social Security ("defendant"), filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum.  Thereafter, on February 29, 2008, defendant filed an Answer to the Complaint.  On June 11, 2008, the parties filed their Joint Stipulation.

The matter is now ready for decision.

///

///

**BACKGROUND**

On March 12, 2001, plaintiff filed an application for Supplemental Security Income benefits. (Administrative Record ["AR"] at 55-57). The Commissioner denied plaintiff's application for benefits both initially and upon reconsideration. (AR at 39-42, 44-47). Thereafter, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR at 48).

On August 13, 2003, the ALJ conducted a hearing in San Bernardino, California.[1] (See AR at 437-456). Plaintiff appeared at the hearing with counsel and testified. (AR at 440-447). Sandra Fioretti, a vocational expert, also testified at the hearing. (AR at 449-455). On August 29, 2003, the ALJ issued his decision denying benefits to plaintiff. (AR at 11-16). The ALJ determined that plaintiff had the following severe impairments: impairment of the musculoskeletal system and from non-insulin dependent diabetes mellitus and asthma. (AR at 12). The ALJ further determined that plaintiff's conditions did not meet or equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 and that plaintiff did not have a severe mental impairment. (Id.). Additionally, the ALJ found that plaintiff had the residual functional capacity to perform a limited range of medium work or light work. (AR at 15). Accordingly, the ALJ concluded that plaintiff was not disabled through the date of the decision. (AR at 12). The Appeals Council denied plaintiff's timely request for review of the ALJ's decision. (AR at 5-6). Thereafter, plaintiff appealed to the United States District Court.

On November 8, 2005, Magistrate Judge James W. McMahon ordered the case remanded for further administrative proceedings to allow the ALJ to make specific findings regarding plaintiff's subjective testimony and, if again rejected plaintiff's testimony, state clear and convincing reasons for doing so. (See AR at 537-546). On January 12, 2006, the Commissioner again denied plaintiff's application for benefits. (AR at 530-535). Thereafter, plaintiff requested another hearing before an ALJ. (AR at 526-527).

---

[1] On June 11, 2002, a preliminary hearing was conducted. However, the ALJ postponed the hearing to allow plaintiff to retain counsel. (AR at 459-462). On December 18, 2002, the ALJ conducted another hearing that he continued to allow for a consultative evaluation and further development of the record. (AR at 439, 465-500).

On January 29, 2007, the ALJ conducted a supplemental hearing in San Bernardino, California. (See AR at 717-732). Plaintiff appeared at the hearing with counsel and testified. (AR at 720-725). Joseph Moody, a vocational expert, also testified at the hearing. (AR at 725-731). Thereafter, on April 27, 2007, the ALJ issued his decision denying benefits to plaintiff. (AR at 504-507). The ALJ determined that plaintiff "has 'severe' impairments involving the musculoskeletal system and from non-insulin dependent diabetes mellitus and asthma, but does not have an impairment or combination of impairments which meet or equal Listing level severity." (AR at 506). The ALJ concluded that given plaintiff's "residual functional capacity in combination with his vocational profile, application of Medical-Vocational Rule 202.10 supports a decision of 'not disabled.'" (AR at 507). Thereafter, plaintiff appealed to the United States District Court.

**PLAINTIFF'S CONTENTIONS**

Plaintiff makes the following claims:

1. The ALJ failed to properly consider the opinion of Thomas Dorsey, M.D., an orthopedic examiner.

2. The ALJ failed to properly consider the lay witness testimony of plaintiff's friends, Joe Frank Olivarez and Cynthia Fetterly.

3. The ALJ failed to pose a complete hypothetical to the vocational expert and misrepresented the record regarding plaintiff's lifting limitations.

**STANDARD OF REVIEW**

Under 42 U.S.C. Section 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996). Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." Richardson, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

## DISCUSSION

**A.     The Sequential Evaluation**

A claimant is disabled under Title II of the Social Security Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantially gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the claimant is engaging in substantially gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 141 (1987). Second, the ALJ must determine whether the claimant has a severe impairment. Parra, 481 F.3d at 746. Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in Appendix I of the regulations. Parra, 481 F.3d at 746. If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. Bowen, 482 U.S. at 141. Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work. Parra, 481 F.3d at 746. If the claimant cannot perform his or her past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantially gainful activity. Parra, 481 F.3d at 746.

The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times, the burden is on the claimant to establish his or her entitlement

to disability insurance benefits. Parra, 481 F.3d at 746. Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity. Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).

**B.     The ALJ's Consideration of the Opinion of Thomas Dorsey, M.D.**

Plaintiff contends that the ALJ failed to provide specific and legitimate reasons for rejecting a portion of the opinion rendered by Thomas Dorsey, M.D., an orthopedic examiner. (Joint Stipulation at 3). Specifically, plaintiff argues that the ALJ failed to provide sufficient reasons for rejecting Dr. Dorsey's opinion regarding plaintiff's lifting limitations. (Id.). Defendant argues that the ALJ properly considered Dr. Dorsey's opinion and that Dr. Dorsey's report and other records show that plaintiff is capable of lifting ten pounds frequently. (Joint Stipulation at 4).

The ALJ is charged with determining a claimant's residual functional capacity based on an evaluation of the evidence as a whole. See 20 C.F.R. § 416.945. Where medical reports are in conflict, questions of credibility and resolutions of conflicts in the testimony are functions solely of the ALJ. See Magallanes v. Brown, 881 F.2d 747, 750 (9th Cir. 1989); Morgan v. Comm'r, 169 F.3d at 599; Yuckert v. Bowen, 841 F.2d 303, 307 (9th Cir. 1988). An ALJ may reject all or part of an examining physician's report if it contains inconsistencies, is conclusory, or inadequately supported by clinical findings. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). However, an ALJ must provide "specific and legitimate reasons" supported by substantial evidence for rejecting the opinion of an examining physician that is contradicted by that of another physician. Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). The ALJ may meet this burden by setting out a detailed and through summary of the facts and conflicting clinical evidence, stating his or her interpretations thereof, and making findings. Morgan, 169 F.3d at 600-01.

On November 16, 2006, Dr. Dorsey performed an orthopedic consultative examination of plaintiff. (AR at 682-690). Dr. Dorsey noted that plaintiff's medical records from prior years indicated a history of chronic obstructive pulmonary disease, type II diabetes, hypertension,

and acute bronchitis. (AR at 682). Dr. Dorsey noted that plaintiff's grip strength, measured by the Jamary Dynamoter (lbs.), was 80/70/65 on the right, and 50/60/55 on the left.[2] (AR at 683). Dr. Dorsey noted that plaintiff was "well developed, well nourished, and in no apparent distress." (Id.).

Dr. Dorsey also found that plaintiff's right shoulder showed a decreased range of motion, negative pain to impingement testing, tenderness anteriorly, negative apprehension test, and that the acromioclavicular joint appeared to be within normal limits. (AR at 684). Dr. Dorsey reported that plaintiff's right thumb MCP joint showed 2+ bony swelling, the ulnar collateral ligament was absent to stress testing, and the rest of plaintiff's right hand was normal. (Id.). Dr. Dorsey noted that plaintiff's left wrist and left hand had a full range of motion without evidence of significant tenderness and swelling, and that plaintiff's bony contours were normal. (Id.). Dr. Dorsey further noted that plaintiff's right shoulder range of motion was flexion ninety-five degrees, abduction ninety-five degrees, external rotation 5 degrees, and normal internal rotation. (AR at 685). Plaintiff's left shoulder range of motion was grossly normal. (Id.). Dr. Dorsey opined that plaintiff most likely has right shoulder degenerative joint disease, left knee degenerative disease, and right thumb metacarpophalangeal joint likely degenerative joint disease plus ulnar collateral ligament insufficiency. (Id.).

In his medical source statement, Dr. Dorsey indicated that plaintiff can lift and carry twenty pounds occasionally and frequently lift and carry less than ten pounds. (AR at 687). Dr. Dorsey noted that plaintiff should never climb, and only occasionally balance, kneel, crouch, crawl, and stoop. (Id.). Additionally, Dr. Dorsey indicated that plaintiff should avoid overhead work with the right arm. (AR at 689). Dr. Dorsey noted that plaintiff had limited use in handling and fingering, and unlimited use in feeling. (Id.). Lastly, Dr. Dorsey noted that plaintiff should have no exposure to vibration and hazards. (AR at 690).

In assessing plaintiff's residual functional capacity, the ALJ gave weight to the opinion rendered by Dr. Dorsey. (AR at 505). The ALJ concluded, however, that Dr. Dorsey's

---

[2] In his decision, the ALJ notes that plaintiff's grip strength of 80/70/65 on the right side is basically within normal limits. (AR at 505).

assessed restrictions regarding plaintiff's right upper extremity were highly questionable. (AR at 505; see AR at 684). The ALJ explained: "The limitations are not consistent with reported full motor power throughout and are particularly inconsistent with grip strength recorded as 80/70/65 on the right, or basically within normal limits on the right side." (AR at 505; see AR at 683). While the ALJ noted that Dr. Dorsey opined that plaintiff had a grip strength of 80/70/65 on the right, the ALJ stated that he found this grip strength inconsistent with Dr. Dorsey's conclusion that plaintiff's range of motion in his right shoulder was decreasing. (AR at 505; see AR at 683, 685). Although the ALJ found Dr. Dorsey's assessed limitations regarding plaintiff's upper right extremity highly questionable, the ALJ did give weight to Dr. Dorsey's determination that plaintiff should refrain from overhead work with the right upper extremity. (AR at 505; see AR at 684-685, 689).

In determining plaintiff's residual functional capacity, the ALJ did not adopt Dr. Dorsey's opinion that plaintiff could frequently lift only less than ten pounds. (AR at 506). As discussed above, the opinion of an examining physician can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. Lester, 81 F.3d at 830-31. Here, the ALJ properly rejected Dr. Dorsey's opinion that plaintiff was limited to frequently lifting less than ten pounds. The ALJ explained that he found Dr. Dorsey's assessed restrictions questionable due to the inconsistency between plaintiff's reported grip strength and assessed right upper extremity limitations. (AR at 505); see Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ may reject all or part of an examining physician's report if it contains inconsistencies).

Moreover, substantial evidence in the record supports the ALJ's determination that plaintiff could lift ten pounds frequently. In the August 29, 2003 decision, which the ALJ incorporated by reference in the April 27, 2007 decision, the ALJ discussed the findings of plaintiff's physicians who evaluated plaintiff over a period of six years. (See AR at 12-16). The ALJ noted that on October 19, 2000, Lilian Chang, M.D., conducted an internal medicine evaluation of plaintiff and opined that plaintiff was capable of lifting and carrying fifty pounds occasionally and twenty-five pounds frequently. (AR at 13; see AR at 207). Dr. Chang also

1 noted plaintiff's grip strength of 105/65/80 pounds on the right. (AR at 204). The ALJ noted that on October 20, 2000, Jasmed A. Haaland, M.D., a State Agency medical consultant indicated in a Physical Residual Functional Capacity Assessment that plaintiff was capable of performing medium work, occasionally lifting fifty pounds and frequently lifting twenty-five pounds. (AR at 13; see AR at 252). The ALJ relied on the findings of Joseph H. Traxler, M.D., a State Agency medical consultant, who on July 26, 2001, indicated that plaintiff could lift fifty pounds occasionally and twenty-five pounds frequently. (AR at 13; see AR at 298). In addition, the ALJ relied on the opinion of Rocely Ella-Tamayo, M.D., who conducted a complete internal medicine evaluation of plaintiff on May 12, 2003, and noted plaintiff's grip strength as 80/80/70 on the right and that plaintiff could lift about fifty pounds occasionally and about twenty-five pounds frequently. (AR at 13; see AR at 412, 415). Dr. Ella-Tamayo further noted that plaintiff should not do any heavy overhead lifting with his right arm. (AR at 415).

Thus, substantial evidence in the record supports the ALJ's determination that plaintiff could lift ten pounds frequently. The ALJ relied on the findings of a number of physicians to support his determination that plaintiff could lift ten pounds frequently. The ALJ's conclusions regarding plaintiff's lifting limitations is more restrictive than the assessments of Dr. Chang, Dr. Haaland, and Dr. Ella-Tamayo. The ALJ properly omitted Dr. Dorsey's assessed lifting limitation because it was inconsistent with the evidence in the record and because Dr. Dorsey's own clinical findings were questionable. The ALJ properly explained his evaluation of Dr. Dorsey's opinion, and his reasons for rejecting portions of his opinion. Moreover, the ALJ adopted the physical residual functional assessment completed by Dr. Dorsey with the exception of his assessed lifting restriction. (AR at 506). Thus, the ALJ did not err in rejecting a portion of Dr. Dorsey's opinion.

**C.    The ALJ's Consideration of the Lay Witness Testimony of Joe Frank Olivarez and Cynthia Fetterly**

Next, plaintiff argues that the ALJ failed to properly consider the third-party questionnaires completed by Joe Frank Olivarez and Cynthia Fetterly, plaintiff's friends. (Joint Stipulation at 6). Plaintiff alleges that the ALJ failed to provide sufficient reasons for rejecting

their testimony regarding plaintiff's functional limitations. (Joint Stipulation at 6-7). Defendant argues that the ALJ did not err in his consideration of the testimony provided by Mr. Olivarez and Ms. Fetterly because their testimony was neither significant nor probative, and the ALJ was, therefore, not required to discuss his reasons for discrediting their testimony. (Joint Stipulation at 8).

A person who is in a position to observe a claimant regularly and testifies regarding the claimant's symptoms and ability to work is a competent lay witness and an ALJ must consider his or her testimony. Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993). However, the ALJ does not need to meet the impossible burden of mentioning every piece of evidence presented in his or her decision. Parks v. Sullivan, 766 F. Supp. 627, 635 (N.D. Ill. 1991); Orcutt v. Barnhart, 2005 U.S. Dist. LEXIS 39731, at *25 (C.D. Cal. Sept. 27, 2005). Silent disregard of competent lay witness testimony is harmless if the Court can confidently conclude that no reasonable ALJ, when fully crediting the testimony at issue, could reach a different disability determination. Stout v. Comm'r, 454 F.3d 1050, 1056 (9th Cir. 2006).

On August 24, 2000, Joe Frank Olivarez, completed a third-party questionnaire that contained a series of questions regarding plaintiff's daily activities and functional capacity. (See AR at 95-100). Mr. Olivarez indicated that plaintiff generally spends his days "Doing a little cleaning but not over doing it we also sit around and talk." (AR at 95). Mr. Olivarez indicated that plaintiff had no difficulty sleeping and caring for his personal needs. (AR at 96). When asked if the plaintiff needs help in completing chores, Mr. Olivarez indicated "In this house all four of us help each other we don't let him do to much becuse [sic] we do know about his condition." (AR at 97). Mr. Olivarez indicated that plaintiff cannot enjoy recreational activities and does not have any hobbies because of his condition. (Id.).

Additionally, when asked if plaintiff had any difficulty getting along with family, friends, co-workers, or others, Mr. Olivarez indicated "Here in this house all four of us get along just fine." (AR at 98). When asked if plaintiff had concentration or memory problems, Mr. Olivarez replied, "Lady a person that has all this [sic] condition or as many as he had I don't think this person can help but to lose concentrating on whatever he is doing." (AR at 99).

The ALJ did not mention the questionnaire completed by Mr. Olivarez in either decision. (See AR at 11-16, 504-507). Even if the ALJ's failure to discuss Mr. Olivarez's testimony was error, it was harmless. While Mr. Olivarez indicated that he lived in the same house as plaintiff, Mr. Olivarez's responses to the questions were neither significant nor probative. For example, when asked if plaintiff exhibited unusual behavior or fears, Mr. Olivarez indicated "No his [sic] the type takes one day at a time." (See AR at 99). When asked how plaintiff's social activities have changed since his condition began, Mr. Olivarez indicated "A person social life how has it change lady I just don't know how to answer this qustion [sic]." (AR at 99). Although plaintiff argues that Mr. Olivarez's testimony is probative, this testimony is merely duplicative of plaintiff's own statements.[3] (See Joint Stipulation at 7-8). Mr. Olivarez's testimony does not provide any additional information or facts that plaintiff had not already presented or to which he had testified. Even if the ALJ had fully credited Mr. Olivarez's testimony, the Court finds that no reasonable ALJ could have reached a different disability determination based solely on Mr. Olivarez's testimony. See Stout, 454 F.3d at 1056. Thus, such an omission is harmless and does not amount to reversible error. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (a decision of the ALJ will not be reversed for errors that are harmless).

Plaintiff also argues that the ALJ failed to provide sufficient reasons for rejecting Ms. Fetterly's testimony. (Joint Stipulation at 6-7). On July 4, 2001, Ms. Fetterly completed a third-party questionnaire and indicated that plaintiff typically spends his days "taking it easy." (AR at 133). Ms. Fetterly indicated that plaintiff cannot breathe when sleeping. (AR at 134). She indicated that plaintiff had no difficulties in caring for himself and that his grooming habits had not changed since he became ill. (Id.). When asked what household chores plaintiff does, Ms. Fetterly indicated "none." (AR at 135). Additionally, when asked if plaintiff needed help in completing these chores and to give an explanation, Ms. Fetterly simply indicated "yes." (Id.). Ms. Fetterly also indicated that plaintiff does not have any hobbies and that he does not watch

---

[3] On August 24, 2000 and July 4, 2001, plaintiff completed daily activities questionnaires and indicated that he had no activities or hobbies. (AR at 90, 128). At the December 18, 2002 hearing, the ALJ asked plaintiff if he had any kind of hobbies and plaintiff responded, "No, I sure don't, not anymore." (AR at 473).

television because it is "often hard for him to comprehend." (AR at 135-136). Ms. Fetterly indicated that plaintiff had no difficulty getting along with family, friends, co-workers, or others. (AR at 136). When asked how plaintiff's social activities had changed since his condition began, Ms. Fetterly indicated that plaintiff "has tremendous trouble participating." (AR at 137). When asked if plaintiff exhibits any unusual behavior or fears, Ms. Fetterly answered "no" in the questionnaire. (Id.). Ms. Fetterly did indicate that plaintiff was forgetful. (Id.).

The ALJ did not mention the questionnaire completed by Ms. Fetterly in either decision. (See AR at 11-16, 504-507). Ms. Fetterly's testimony regarding plaintiff's functional abilities, however, was vague. Most of her responses were one word answers with no explanations. Additionally, the record does not explain Ms. Fetterly's relationship with plaintiff or the extent of interaction between them. Plaintiff argues that the ALJ improperly disregarded Ms. Fetterly's testimony that plaintiff cannot breathe while sleeping. (Joint Stipulation at 6; see AR at 134). The ALJ, however, stated in his decision that plaintiff has breathing problems, and determined that plaintiff has a severe impairment involving asthma. (AR at 505-506). Because the ALJ discussed plaintiff's breathing problems, and made findings regarding plaintiff's asthma, the Court finds that no reasonable ALJ would have reached a different disability determination based on Ms. Fetterly's testimony. See Stout, 454 F.3d at 1056. The Court finds, therefore, that any error the ALJ committed by silently disregarding Ms. Fetterly's testimony is harmless and cannot serve as the basis for remand. See Burch, 400 F.3d at 679 (a decision of the ALJ will not be reversed for errors that are harmless).

D.   **The Hypothetical Question Posed to the Vocational Expert**

Finally, plaintiff argues that the ALJ failed to pose a complete hypothetical to the vocational expert and misrepresented the record regarding plaintiff's lifting limitations. (Joint Stipulation at 10). In particular, plaintiff alleges that the ALJ failed to include Dr. Dorsey's opinion that plaintiff can lift only less than ten pounds frequently in the hypothetical he presented to the vocational expert. (Joint Stipulation at 10-11). Plaintiff further argues that the ALJ failed to include plaintiff's assessed postural, manipulative, and environmental limitations in the hypothetical presented to the vocational expert. (Joint Stipulation at 11).

At step five of the sequential evaluation, the ALJ must determine whether plaintiff's impairments prevent him from performing any other substantial gainful activity. Parra, 481 F.3d at 746. At this step, the burden is on the Commissioner to show that plaintiff may perform other gainful activity. Lounsburry, 468 F.3d at 1114. This burden may be met by eliciting the testimony of a vocational expert in response to a hypothetical that sets out all of plaintiff's limitations and restrictions. Magallanes, 881 F.2d at 756.

In order for the vocational expert's testimony to constitute substantial evidence, the ALJ must present the vocational expert with a hypothetical that is based on medical assumptions supported by substantial evidence in the record that reflects each of the plaintiff's limitations. Andrews, 53 F.3d at 1044; Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995). The hypothetical should be "accurate, detailed and supported by the medical record." Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999); Osenbrock v. Apfel, 240 F.3d 1157, 1165 (9th Cir. 2001).

The ALJ is required to make specific findings justifying the decision to discredit certain alleged impairments, and those justifications must be supported by substantial evidence. See Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984); Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Thus, it is proper to omit an alleged impairment from a hypothetical if the omission of the impairment is supported by substantial evidence in the record. Osenbrock, 240 F.3d at 1165. If the hypothetical fails to reflect each of plaintiff's limitations that are supported by substantial evidence, the vocational expert's answer has no evidentiary value. Gallant, 753 F.2d at 1456 ("Because neither the hypothetical nor the answer properly set forth all of [plaintiff's] impairments, the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's findings.").

At the January 29, 2007 hearing, the ALJ asked the vocational expert to consider a hypothetical-person with the following limitations:

> Lift twenty pounds occasionally, ten frequently. Stand, walk
> two out of eight. Sitting unrestricted. Should not climb or
> work at heights. Other postural activities may be performed

12

     occasionally. Should not use, the right upper extremity for overhead work. Fingering may be done frequently. Feeling constantly. Should avoid humidity, wetness, heights, dangerous unguarded moving machinery . . . consider that the work should be unskilled, entry level and should avoid, claimant should avoid heavy concentrations of respiratory contamination and pollution.

(AR at 727). From the above hypothetical, the vocational expert concluded that a person with those limitations is capable of being a small part assembler (DOT number: 706.684-022), hand packager (DOT number: 920.587-018), or storage facility rental clerk (DOT number: 295.367-026).[4] (AR at 727, 729).

  Plaintiff argues that the ALJ failed to include all of plaintiff's assessed limitations and restrictions in the hypothetical. First, plaintiff argues that the ALJ misrepresented the record by stating that plaintiff can lift ten pounds frequently. (Joint Stipulation at 10-11; see AR at 727). As discussed above, there is substantial evidence in the record that plaintiff is capable of lifting ten pounds frequently. (See supra section B). Thus, the ALJ did not err by failing to indicate that plaintiff can lift less than ten pounds frequently. See Osenbrock, 240 F.3d at 1165 (ALJ's decision to omit depression from the hypothetical was supported by substantial evidence in that the most recent medical evaluations by the treating physicians had only diagnosed depression as a mild impairment).

  Next, plaintiff argues that the ALJ should have included plaintiff's assessed manipulative limitations. (Joint Stipulation at 11). Specifically, plaintiff alleges that the ALJ failed to include Dr. Dorsey's conclusion "that plaintiff is 'limited' in reaching in all directions" in the hypothetical. (Joint Stipulation at 11). This limitation, however, is not supported by substantial evidence in the record. Between 2000 and 2005, numerous doctors found that plaintiff had no manipulative

---

[4] The Dictionary of Occupational Titles ("DOT") describes the duties and requirements of the numerous occupations that it chronicles. See Dictionary of Occupational Titles, Fourth Edition, 1991, available at http://www.oalj.dot.gov/libdot.htm.

limitations. For example, on November 7, 2000, Dr. Swan opined that plaintiff had no manipulative limitations. (AR at 237). Also, on April 30, 2001, Dr. Haaland opined that plaintiff had no manipulative limitations. (AR at 254). Additionally, on July 26, 2001, Dr. Traxler opined that plaintiff had no manipulative limitations. (AR at 300). Lastly, on August 22, 2005, Dr. Swan again opined that plaintiff had no manipulative limitations. (AR at 663). Furthermore, in his decision, the ALJ concluded that Dr. Dorsey's findings regarding plaintiff's right upper extremity were highly questionable. (AR at 505). Because there is substantial evidence in the record that supports the ALJ's determination that plaintiff has no manipulative limitations, the ALJ's omission of the reaching limitation does not constitute error. See Osenbrock, 240 F.3d at 1165 (an ALJ can properly omit a limitation from the hypothetical presented to the vocational expert if the omission of the limitation is supported by substantial evidence in the record).

Additionally, plaintiff argues that the ALJ failed to include plaintiff's feeling limitations in the hypothetical to the vocational expert. (Joint Stipulation at 11). Plaintiff stated that Dr. Dorsey reported that plaintiff "is limited in his 'feeling (skin receptors)'" and argues that this limitation was improperly omitted from the hypothetical. (Joint Stipulation at 11). Plaintiff's argument, however, is without merit. Dr. Dorsey specifically indicated that plaintiff is "unlimited" in feeling and that plaintiff can constantly feel. (AR at 689). The ALJ included Dr. Dorsey's assessment that plaintiff can feel constantly in the hypothetical, and, thus, committed no error. (See AR at 727).

Plaintiff argues that the ALJ also failed to include plaintiff's assessed environmental limitation in the hypothetical to the vocational expert. (Joint Stipulation at 11). Specifically, plaintiff argues that the ALJ should have included Dr. Dorsey's finding that plaintiff should have no exposure to vibrations. (Joint Stipulation at 11; see AR at 689). At the hearing, the ALJ acknowledged plaintiff's limitation regarding exposure to vibrations. (See AR at 729-730). Plaintiff's attorney and the vocational expert discussed the tools used in the small parts assembler job, and the vocational expert explained that if plaintiff used a screw driver, there would be a degree of vibration, but not a significant amount. (Id.). Even though the ALJ did not specifically include plaintiff's vibration limitation in the hypothetical, it can be inferred from

14

the vocational expert's testimony that he was aware of the limitation. Additionally, even if the small parts assembler job does require a degree of vibration, the vocational expert also testified that plaintiff could perform the functions of hand packager and storage facility rental clerk which do not require exposure to vibration. Thus, the ALJ committed no error.

Finally, plaintiff alleges that the ALJ failed to include Dr. Traxler's findings regarding plaintiff's postural limitations. (Joint Stipulation at 11). Specifically, plaintiff notes that Dr. Traxler reported in 2001 that plaintiff could frequently balance, stoop, or crawl, and only occasionally climb, kneel, or crouch. (Joint Stipulation at 11; see AR at 299). In 2006, Dr. Dorsey opined that plaintiff should never climb and only occasionally balance, kneel, crouch, crawl, or stoop. (See AR at 688). In the hypothetical posed to the vocational expert, the ALJ stated that plaintiff should not climb or work at heights, and limited all other postural activities to be performed occasionally. (See AR at 727). Thus, the hypothetical to the vocational expert included postural limitations that were more restrictive than the limitations assessed by Dr. Traxler. Thus, the ALJ committed no error in omitting Dr. Traxler's findings regarding plaintiff's postural limitations from the hypothetical posed to the vocational expert.

## ORDER

After careful consideration of all documents filed in this matter, this Court finds that the decision of the Commissioner is supported by substantial evidence and that the Commissioner applied the proper legal standards. The Court, therefore, AFFIRMS the decision of the Commissioner of Social Security Administration.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: September 24, 2008

                                                  /s/-Jennifer T. Lum
                                                  JENNIFER T. LUM
                                                  UNITED STATES MAGISTRATE JUDGE